1  Steve W. Ritcheson (State Bar No. 174062)
   swritcheson@insightplc.com
2  INSIGHT PLC
   578 Washington Blvd., #503
3  Marina del Ray, CA 90292
   (424) 289-9191
4
5  Matthew J. Antonelli (*Pro Hac Vice* to be filed)
   matt@ahtlawfirm.com
6  Zachariah S. Harrington (*Pro Hac Vice* to be filed)
   zac@ahtlawfirm.com
7  Larry D. Thompson, Jr. (*Pro Hac Vice* to be filed)
   larry@ahtlawfirm.com
8  C. Ryan Pinckney (*Pro Hac Vice* to be filed)
   ryan@ahtlawfirm.com
9  ANTONELLI, HARRINGTON
   & THOMPSON LLP
10 4306 Yoakum Blvd., Ste. 450
   Houston, TX 77006
11 (713) 581-3000
12 *Attorneys for Defendant American Patents LLC*

13              UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15                   SOUTHERN DIVISION
16

17 Epson America, Inc.,                | Case No.   8:21-cv-02102-DOC (ADSx)
18              Plaintiff,              | **NOTICE OF MOTION AND MOTION
19     v.                              | TO DISMISS UNDER FED. R. CIV. P.
                                        | 12(B)(2) FOR LACK OF PERSONAL
20 American Patents LLC,               | JURISDICTION OR, IN THE
                                        | ALTERNATIVE, TO DISMISS, STAY,
21              Defendant.             | OR TRANSFER TO THE EASTERN
                                        | DISTRICT OF TEXAS UNDER THE
22                                      | FIRST-TO-FILE RULE**
23                                      | JUDGE:  DAVID O. CARTER
                                        | HEARING DATE:  April 18, 2022
24                                      | TIME: 8:30 a.m.
                                        | CRTRM:  9D
25
26
27
28
                                   1

1

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on April 18, 2022, at 8:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 9D of the Ronald Reagan United States Courthouse, located at 411 West Fourth Street, Santa Ana, California, Defendant American Patents LLC, will and does move the Court for an order dismissing this action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, to dismiss, stay or to transfer this action to the Eastern District of Texas under the first-to-file rule.

Counsel for the parties have met and conferred as required by L.R. 7-3. While counsel engaged in a meaningful discussion, they were unable to reach a resolution eliminating the need for this motion.  This motion is therefore made following the conference of counsel, which took place on March 3, 2022.

This motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this matter, and the arguments of counsel at the hearing on this motion.

Respectfully submitted,

March 11, 2022                         INSIGHT, PLC


By */s/ Steve W. Ritcheson*
Steve W. Ritcheson (SBN 174062)
Attorneys for American Patents LLC

# **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

III. THIS COURT LACKS PERSONAL JURISDICTION OVER
     AMERICAN PATENTS ........................................................................... 3

    A.  Legal Standard .................................................................................. 3

    B.  Epson America Has Not Shown That American Has Minimum Contacts
       with California .................................................................................... 5

        1.  Minimum contacts must be based on the defendant's contacts with
           the forum state, not its contacts with forum residents ......................... 5

        2.  American's suit in Texas against Epson America's foreign
           affiliates cannot support jurisdiction in California .............................. 6

        3.  American's settlements of Texas cases against unaffiliated
           Californian companies cannot support jurisdiction in California ....... 9

        4.  This case does not arise from or relate to American's settlements
           with unaffiliated California-based companies ................................... 13

    C.  Exercising Personal Jurisdiction over American Would Not Comport
       with Fair Play and Substantial Justice ....................................................... 15

IV. ALTERNATIVELY, THE COURT SHOULD DISMISS, STAY, OR
     TRANSFER THIS ACTION BASED ON THE FIRST-TO-FILE RULE ...... 19

V.   CONCLUSION ...................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **Cases**

4  *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,

5    817 F.3d 755 (Fed. Cir. 2016)..........................................................4, 5

6  *Adobe Sys. Inc. v. Tejas Research, LLC*,

7    No. C-14-0868-EMC, 2014 WL 4651654 (N.D. Cal. Sept. 17, 2014) ..........7, 11

8  *Alltrade, Inc. v. Uniweld Prods., Inc.*,

9    946 F.2d 622 (9th Cir. 1991)......................................................20, 21

10 *American Patents LLC v. Seiko Epson Corp., et al.*,

11   No. 4:21-cv-00718-ALM, Dkt. 21, Order Governing Proceedings

12   (E.D. Tex. Jan. 4, 2022) ...............................................................7, 11

13 *AU Optronics Corp. Am. v. Vista Peak Ventures, LLC*,

14   No. 18-CV-04638-HSG, 2019 WL 690282 (N.D. Cal. Feb. 19, 2019)............8-9

15 *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,

16   No. SACV 07-846-MRP (ANx), 2008 WL 7071464

17   (C.D. Cal. Jan. 17, 2008), *aff'd* 566 F.3d 1012 (Fed. Cir. 2009).................11-12

18 *Autonomy, Inc. v. Adiscov, LLC*,

19   No. C 11-00420 SBA, 2011 WL 2175551 (N.D. Cal. June 3, 2011) .................7

20 *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,

21   846 F.2d 731 (Fed. Cir. 1988)............................................................16

22 *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,

23   552 F.3d 1324 (Fed. Cir. 2008).................................................7, 11, 18

24 *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

25   874 F.3d 1064 (9th Cir. 2017)............................................................6

26 *Beverly Hills Fan Co. v. Royal Sovereign Corp.*,

27   21 F.3d 1558 (Fed. Cir. 1994)........................................................3, 18

28

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,

    444 F.3d 1356 (Fed. Cir. 2006) ......................................................................... 12

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985) ....................................................... 4, 5, 13, 15, 16, 18, 19

*Celgard, LLC v. SK Innovation Co. Ltd.*,

    792 F.3d 1373 (Fed. Cir. 2015) ........................................................................... 4

*Communications Test Design, Inc. v. Contec, LLC*,

    952 F.3d 1356 (Fed. Cir. 2020) ......................................................................... 20

*Docusign, Inc. v. Clark*,

    No. 21-cv-047850-WHO, 2022 WL 225623 (N.D. Cal. Jan. 25, 2022) ........ 7, 17

*Electronics for Imaging, Inc. v. Coyle*,

    340 F.3d 1344 (Fed. Cir. 2015) ........................................................................... 4

*EMC Corp. v. Bright Response, LLC*,

    No. C-12-2841-EMC, 2012 WL 4097707 (N.D. Cal. Sept. 17, 2012) ............. 21

*EMC Corp. v. Norand Corp.*,

    89 F.3d 807 (Fed. Cir. 1996) ............................................................................. 20

*Engineering & Inspection Servs., LLC v. IntPar, LLC*,

    No. 13-0801, 2013 WL 5589737 (E.D. La. Oct. 10, 2013) ............................... 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

    141 S. Ct. 1017 (2021) ........................................................................... 14, 15, 18

*Futurewei Techs., Inc. v. Acacia Research Corp.*,

    737 F.3d 704 (Fed. Cir. 2013) ..................................................................... 19, 21

*Genentech, Inc. v. Eli Lilly & Co.*,

    998 F.2d 931 (Fed. Cir. 1993) ....................................................................... 19-20

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*,

    179 F.R.D. 264 (C.D. Cal. 1998) ...................................................................... 21

*International Shoe Co. v. Washington*,

    326 U.S. 310 (1945) ..................................................................................... 4, 15

*Juniper Networks, Inc. v. SSL Servs., LLC,*
  No. C 08-5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009),
  *aff'd* 2010 WL 5140471 (Fed. Cir. Dec. 13, 2010)..........................................7, 8

*Kellytoy v. Jay at Play Int'l Hong Kong Ltd.,*
  2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) ......................................................15

*Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.,*
  787 F.3d 1237 (9th Cir. 2015)...................................................................20-21

*Kyocera Int'l, Inc. v. Semcon IP, Inc.,*
  No. 3:18-CV-1575-CAB-MDD, 2018 WL 5112056
  (S.D. Cal. Oct. 19, 2018)...............................................................................8, 10

*LNS Enters. LLC v. Continental Motors, Inc.,*
  22 F.4th 852 (9th Cir. 2022) ...........................................................................15

*Marvell Semiconductor Inc. v. Monterey Research LLC,*
  No. 20-cv-03296-VC, 2020 WL 6591197 (N.D. Cal. Nov. 11, 2020) ..............22

*Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.,*
  909 F.3d 1134 (Fed. Cir. 2018).....................................................................6, 8

*Merial Ltd. v. Cipla Ltd.,*
  681 F.3d 1283 (Fed. Cir. 2015).........................................................................19

*Nanonexa Corp. v. Univ. of Chicago,*
  No. 10-CV-2631-LHK, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010) .............12

*New World Int'l v. Ford Global Techs., LLC,*
  859 F.3d 1032 (Fed. Cir. 2017).........................................................................13

*Picot v. Weston,*
  780 F.3d 1206 (9th Cir. 2015)............................................................................6

*Radio Sys. Corp. v. Accession, Inc.,*
  638 F.3d 785 (Fed. Cir. 2011)............................................................................6

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998).............................................................12, 13, 17

iv

*Silent Drive, Inc. v. Strong Indus., Inc.*,

    326 F.3d 1194 (Fed. Cir. 2003) ........................................................................ 18

*Southern Constr. Co. v. Pickard*,

    371 U.S. 57 (1962) ............................................................................................ 20

*Trimble, Inc. v. PerDiemCo. LLC*,

    997 F.3d 1147 (Fed. Cir. 2021) ................................................................. 3, 4, 15

*USA Scientific, LLC v. Rainin Instrument, LLC*,

    No. C-06-4651-SBA, 2006 WL 3334927 (N.D. Cal. Nov. 16, 2006) .............. 21

*Vizio, Inc. v. Pragmatus Telecom, LLC*,

    No. SACV 14-00462 JAK, 2014 WL 12584306

    (C.D. Cal. June 18, 2014) ................................................................................ 21

*Walden v. Fiore*,

    571 U.S. 277 (2014) ................................................................................. 5, 6, 7, 8

*Wilton v. Seven Falls Co.*,

    515 U.S. 277 (1995) ......................................................................................... 20

*World-Wide Volkswagen Corp v. Woodson*,

    444 U.S. 286 (1980) ................................................................................... 13, 18

*Xilinx, Inc. v. Pabst Licensing GmbH and Co. KG*,

    848 F.3d 1346 (Fed. Cir. 2017) ......................................................................... 4

*ZTE (USA) Inc. v. AGIS Software Dev. LLC*,

    No. 18-cv-06185, 2019 WL 4345961 (N.D. Cal. Sept. 12, 2019) ................. 7, 11


**Statutes and Other Authorities**

Cal. Civ. Proc. Code § 410.10 (West. 2020) ............................................................ 4

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 3

NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT
Case No. 8:21-cv-02102-DOC (ADSx)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Defendant American Patents LLC is in the business of enforcing and licensing its patents, including the patents at issue in this action. To that end, American has asserted patents in its portfolio against several companies—in each case by filing an infringement action in its home state of Texas. In September 2021, American filed suit in Texas for patent infringement against two of Plaintiff Epson America, Inc.'s foreign affiliates ("the Seiko Epson Action"). In response, Epson America filed this declaratory judgment action. Epson America's complaint seeks a ruling that certain products it sells in the United States do not infringe any of four patents asserted in the Seiko Epson Action in Texas. But the Court should dismiss the complaint because American is not subject to personal jurisdiction in this district. In the alternative, the Court should dismiss, stay, or transfer the case under the first-to-file rule.

Recognizing that American has never contacted Epson America—in California or anywhere else—Epson America offers a strained theory of jurisdiction based on two sets of alleged contacts. First, Epson America alleges that American has deliberately directed its efforts to enforce the Patents-in-Suit at California by implicating Epson America in American's claims in the Seiko Epson Action. Second, Epson America alleges that American has deliberately directed its licensing efforts toward California by suing other California-based companies for infringement in Texas and licensing them when those cases settled.

Personal jurisdiction, however, must be based on the defendant's contacts with the forum state—not its contacts with residents of that state. As a result, even if American had sued Epson America in the Seiko Epson Action, that would not support personal jurisdiction in California over American. So the fact that American merely implicated Epson America in that Texas case, without naming it as a defendant, cannot do so. Likewise, American's litigations in Texas against

California-based companies that are unrelated to Epson America cannot support jurisdiction in California. The alleged non-exclusive licenses resulting from those settlements are merely ancillary to the Texas suits themselves, not cognizable contacts with California. Nor does this declaratory judgment action arise from or relate to any of those alleged third-party licenses, which is an independent reason why they cannot support California jurisdiction. Finally, even if Epson's allegations could support minimum contacts with California, the exercise of jurisdiction over American would not comport with fair play and substantial justice. Thus, the Court should dismiss this case for lack of personal jurisdiction.

But even if this Court had personal jurisdiction over American, it should still decline to hear this suit under the first-to-file rule. The first-to-file rule exists precisely to prevent the scenario Epson America seeks to create here: two sister courts simultaneously adjudicating the same issues between substantially identical parties. Letting this case go forward in this district would undermine judicial efficiency, waste court and party resources, and risk conflicting decisions. This dispute should be decided in the Eastern District of Texas, where American filed the Seiko Epson Action for infringement over three months before this case was filed. Thus, in the alternative, the Court should dismiss, stay, or transfer this case under the first-to-file rule.

## II.   FACTUAL BACKGROUND

American recites certain allegations from Epson America's complaint below, accepting them as true only for purposes of resolving this motion.

American is a Texas Limited Liability Company with its place of business at 2325 Oak Alley, Tyler, Texas. Dkt. 1 (Complaint) at ¶ 3. Epson America is a California corporation with its principal place of business in Los Alamitos, California. ¶ 2. On September 15, 2021, American filed the Seiko Epson action against Seiko Epson Corporation ("Seiko Japan") and Epson Precision Philippines ("Epson Philippines"). *Id.* at ¶ 7 and Ex. A. In the Seiko Epson action, American

accused four families of products of infringement.  Epson America is responsible for sales in the United States of those accused Epson products.  *Id.* at ¶ 14.  In its infringement allegations in the Seiko Epson Action, American referred to images of the accused Epson products on Epson.com, a website operated and controlled by Epson America "for the U.S. Market."  *Id.* at ¶¶15-23.  Based on those infringement allegations, Epson America contends that American has directly implicated Epson America in its claims for patent infringement.  *Id.* at ¶¶ 24 and 26.  Thus, Epson America urges, American has directed its claims for patent infringement at California and this District.  *Id.* at ¶¶ 27, 42, 46.

To support its argument for personal jurisdiction, Epson America also alleges that American "has directed licensing efforts . . . at California."  *Id.* at ¶ 28.  Specifically, American has allegedly licensed the asserted patents to at least eight California-based companies and has attempted to license a ninth California-based company.  *Id.* at ¶¶ 29-39.  Those companies entered into these licenses in order to settle American's patent infringement suits.  *Id.* All those suits against California-based companies, however, were brought in the Eastern District and Western District of Texas, American's home state.  *Id.* at ¶¶ 30-37.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER AMERICAN PATENTS

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to challenge the Court's exercise of jurisdiction over it.  Fed. R. Civ. Proc. 12(b)(2).  In this suit for declaratory judgment of non-infringement of patents, Federal Circuit law governs whether the Court has personal jurisdiction.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994) ("Although in one sense the due process issue in this case is procedural, it is a critical determinant of whether and in what forum a patentee can seek redress for infringement of its rights."); *Trimble, Inc. v. PerDiemCo. LLC*, 997 F.3d 1147, 1152 (Fed. Cir. 2021)

(Federal Circuit law applies because the jurisdictional issue is intimately involved with the substance of the patent laws).

The threshold test for whether a court can exercise personal jurisdiction over an out-of-state defendant depends on (1) whether the forum state's long-arm statute permits service of process and (2) whether asserting personal jurisdiction would violate due process. *Trimble*, 997 F.3d at 1152. California's long-arm statute permits service of process to the limits of the Due Process Clause of the U.S. Constitution. *Id.* (citing *Xilinx, Inc. v. Pabst Licensing GmbH and Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) and Cal. Civ. Proc. Code. § 410.10 (West. 2020)). Thus, the two inquiries fold into one: whether the exercise of jurisdiction would be consistent with due process. *Trimble*, 997 F.3d at 1152.

Due process requires that a non-resident defendant "have certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has said that the minimum contacts requirement is met when the defendant "purposely directed" activities at the forum, and "the lawsuit results from alleged injuries that "arise out of or relate to" those activities. *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). The relationship among the defendant, the forum, and the litigation must arise out of contacts that the "defendant *himself*" creates with the forum state. *Burger King*, 471 U.S. at 475 (emph. in original).

Where a court determines that a plaintiff has made a prima facie case for asserting specific jurisdiction, the burden shifts to the defendant to prove that exercising personal jurisdiction nevertheless would be unreasonable. *Celgard, LLC v. SK Innovation Co. Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015) (citing *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003)). For that part of the specific jurisdiction inquiry, courts consider five factors: (1) the

4

defendant's burden in appearing in the forum; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of controversies; and (5) the common interest of the several States in promoting substantive social policies. *Burger King*, 471 U.S. at 477.

## B. Epson America Has Not Shown That American Has Minimum Contacts with California

### 1. *Minimum contacts must be based on the defendant's contacts with the forum state, not its contacts with forum residents.*

In 2014, the Supreme Court reinforced the traditional understanding that the minimum contacts analysis must focus on the defendant's contacts with the forum state—not its contacts with a resident of the state. *Walden v. Fiore*, 571 U.S. 277, 291 (2014).  In *Walden*, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a Nevada-bound plane. *Id.* at 281.  *Walden* held that Nevada courts lacked specific jurisdiction, even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada." *Id.* at 288.  Because the "***relevant*** conduct occurred entirely in Georgi[a] . . . the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." *Id.* at 291 (emphasis added).

Since *Walden*, courts of appeals have continued to focus on the defendant's contacts with the forum state, not just with forum residents.  The Federal Circuit has explained that the minimum contacts requirement focuses on whether "the defendant's suit-related conduct …create[s] a substantial connection with the forum State." *Acorda Therapeutics*, 817 F.3d at 759 (quoting *Walden*, 571 U.S. at 284).  *Walden* "makes clear that due process is not satisfied by a showing of 'mere injury to a forum resident'; a court must examine 'whether the defendant's conduct connects him to the forum in a meaningful way.'" *Id.* at 771 (O'Malley, J.

concurring ) (quoting *Walden*, 571 U.S. at 290).  And the Ninth Circuit has reiterated that courts must "'look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," because "a 'mere injury to a forum resident is not a sufficient connection to the forum.'"  *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Walden,* 571 U.S. at 285, 290); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.").

## 2. *American's suit in Texas against Epson America's foreign affiliates cannot support jurisdiction in California.*

Epson America's first argument for personal jurisdiction is that American has intentionally established minimum contacts with California because American "has directed its infringement allegations at Epson America in California and this District."  Dkt. 1 at ¶ 27.  In its September 15, 2021 complaint against Seiko Epson and Epson Philippines, American alleges that both "directly infringe" the four asserted patents and "indirectly infringe" three of them.  *Id.*, ¶ 8.  But the Epson entities named as defendants do "not make, use, sell, or offer to sell any products in, or import and products into, the United States."  Dkt. 1, ¶¶ 10,11.  Rather, it alleges, "Epson America is the only company within the Epson corporate structure with responsibility for sales in the United States of Epson's projectors, laser projectors, smart glasses, printers and other categories of products…" *Id.*, ¶ 14.  In support of its theory that American has directed its infringement allegations against Epson America through its Texas complaint against Seiko and Epson Philippines, Epson America alleges that "in support of its allegations of infringement" American included in its complaint "images of the accused Epson products" and included URLs from Epson America's United States website as the source of these

6

1   images.  *Id.* ¶ 15.

2          But filing a patent case in Texas simply cannot support personal jurisdiction

3   in California.  The Federal Circuit has been clear: "Enforcement activities taking

4   place outside of the forum state ***do not*** give rise to personal jurisdiction in the

5   forum" over the patentee.  *Radio Sys. Corp. v. Accession*, *Inc.*,638 F.3d 785, 792

6   (Fed. Cir. 2011) (emphasis added).  To the contrary, "in this context the minimum

7   contacts prong requires some enforcement activity ***in the forum state*** by the

8   patentee."  *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed.

9   Cir. 2018) (emphasis added).  *See also Avocent Huntsville Corp. v. Aten Int'l Co.,*

10  *Ltd.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008) ("We are aware of no precedent that

11  holds that the filing of a suit in a particular state subjects that [filing] party to

12  specific personal jurisdiction everywhere else.").

13         For that reason, district courts routinely find that lawsuits filed in another

14  state do not support personal jurisdiction in the forum state over the patentee.  *See,*

15  *e.g., Docusign, Inc. v. Clark*, No. 21-cv-04785-WHO, 2022 WL 225623, * 5 (N.D.

16  Cal. Jan. 25, 2022) ("While initiating judicial enforcement of a patent supports

17  personal jurisdiction, it does so only when the defendant initiates such enforcement

18  within the forum state.") (citing *Avocent*, 552 F.3d at 1339); *ZTE (USA) Inc. v.*

19  *AGIS Software Dev. LLC*, No. 18-cv-06185, 2019 WL 4345961, *6 (N.D. Cal.

20  Sept. 12, 2019) ("Courts have repeatedly found that out-of-state enforcement

21  activities are insufficient to establish personal jurisdiction.") (citations omitted);

22  *Autonomy, Inc. v. Adiscov, LLC*, No. C 11-00420 SBA, 2011 WL 2175551, at *4

23  (N.D. Cal. June 3, 2011) ("[P]atent litigation commenced outside the forum is not

24  probative of purposeful availment.") (citing *Juniper Networks , Inc. v. SSL Servs.*,

25  LLC, No. C 08-5758 SBA, 2009 WL 3837266 *4 (N.D. Cal. Nov. 16, 2009), *aff'd*

26  2010 WL 5140471 (Fed. Cir. Dec. 13, 2010)).

27         Even out-of-state lawsuits filed against California residents do not support

28  jurisdiction in California.  As the Supreme Court explained in *Walden*, "the

'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.  So "it is not enough that [American's Texas] lawsuit might have 'effects' in" California.  *Maxchief*, 909 F.3d at 1138 (holding that DJ defendant was not subject to personal jurisdiction in Tennessee based on a lawsuit "filed in California against a California resident," as that activity "was directed at California, not Tennessee.")  "Rather, jurisdiction 'must be based on intentional conduct by the defendant' ***directed at the forum.***" *Id.* (emphasis added) (quoting *Walden*, 571 U.S. at 286).

Unsurprisingly, then, district courts regularly reject arguments that personal jurisdiction in a declaratory judgment case can rest on a patentee's suit in another state against even a forum state resident.  *See, e.g., Kyocera Int'l, Inc. v. Semcon IP, Inc.*, No. 3:18-CV-1575-CAB-MDD, 2018 WL 5112056, at *3 (S.D. Cal. Oct. 19, 2018) (the fact that the defendant sued, in Texas, entities that have places of business in California is tangential and inadequate to justify the exercise of personal jurisdiction); *Adobe Sys. Inc. v. Tejas Research, LLC,* No. C-14-0868-EMC, 2014 WL 4651654, *5 (N.D. Cal. Sept. 17, 2014) ("[T]hat Tejas has pursued enforcement actions against California residents in the Eastern District of Texas does not support the exercise of personal jurisdiction [over] Tejas in California"); *Juniper Networks v. SSL Servs., LLC*, No. 08-cv-5758-SBA, 2009 WL 3837266, *4 (N.D. Cal. Nov. 16, 2009) (explaining that plaintiff's argument that the act of filing a lawsuit against an alleged California resident—in a Texas district court—is sufficient to make a prima facie showing does not "make any logical sense.") (citations omitted).

For these reasons, even if American Patents had named Epson America as a defendant in the Seiko Epson Action in Texas, that suit would not support personal jurisdiction over American in California.  So the fact that American's complaint in the Seiko Epson Action simply ***mentions*** Epson America in its infringement

8

1    allegations, without making it a defendant, certainly cannot support personal

2    jurisdiction in California.  *See AU Optronics Corp. Am. v. Vista Peak Ventures,*

3    *LLC*, No. 18-CV-04638-HSG, 2019 WL 690282, at *3 (N.D. Cal. Feb. 19, 2019)

4    ("Out-of-state actions are insufficient [to support personal jurisdiction], even when

5    brought against a forum resident," so "[i]t makes even less sense to find personal

6    jurisdiction where, as here, the out-of-state action was not brought against a forum

7    resident.").  That conclusion especially applies here because the only defendants in

8    the Texas case are Epson American's foreign affiliates: companies that it alleges

9    have "no facilities or contacts in the United States" and do "not make, use, sell, or

10   offer to sell any products in, or import any products into, the United States."  Dkt.

11   1 at ¶¶ 10, 11.

12           And American's Seiko Epson Action in Texas is the only alleged

13   jurisdictional contact that is actually connected to Epson America.  American has

14   never contacted Epson America, itself, anywhere.  Nor did American sue Epson

15   America, in Texas or anywhere else.  All American has done is to accuse products

16   that Epson America markets and sells in the United States, in a Texas case that

17   does not name Epson America as a defendant.  The named defendants in that case

18   are foreign, and Epson America is only mentioned as part of infringement

19   allegations against those defendants.  So that case certainly is not a cognizable

20   contact **with California**—which is what *Walden* requires to support personal

21   jurisdiction.

22           **3.   American's settlements of Texas cases against unaffiliated**

23                 **Californian companies cannot support jurisdiction in California.**

24           Epson America's second argument for personal jurisdiction is that American

25   has intentionally established minimum contacts with California because American

26   allegedly "has directed licensing efforts—including licensing of the patents-in-

27   suit—at California."  Dkt. 1, ¶ 28.  As alleged by Epson, at least eight of these suits

28   resulted in American entering into settlements that included licenses with

9

1   companies that are based in California, and a ninth suit allegedly involves attempts

2   to settle with and license a California-based company. Dkt. 1 at ¶¶ 29-37, 39. But

3   American did not approach potential licensees by sending them notice letters, a

4   common practice. Instead, it simply sued infringers in its home state, Texas, and

5   settled those Texas cases. The alleged licenses arising from those settlements

6   cannot support personal jurisdiction in California for at least two reasons.

7          First, jurisdiction cannot be supported by "contacts with California" that "are

8   merely ancillary to enforcement actions taken by [American] in Texas." *Kyocera*

9   *Int'l, Inc. v. Semcon IP, Inc.*, No. 3:18-CV-1575-CAB-MDD, 2018 WL 5112056,

10  at *4 (S.D. Cal. Oct. 19, 2018) (holding that ancillary activities such as the

11  patentee "attend[ing] mediations in California for two of the Texas infringement

12  actions" or "us[ing] a . . . process server with an office in California" for out-of-

13  forum cases did not support a finding that the patentee purposefully availed itself

14  of the privilege of conducting activities in California). This conclusion flows

15  naturally from the principle that enforcement activities in another state do not

16  support personal jurisdiction in the forum state. If a lawsuit filed in Texas does not

17  support jurisdiction in California, why would ancillary activities taken in

18  furtherance of that Texas lawsuit confer California jurisdiction?

19         All of the licensing activities alleged by Epson America are actions ancillary

20  to lawsuits filed in Texas against unrelated companies. The licensing activities that

21  Epson America alleges are either licenses obtained from the settlements of Texas

22  cases, or attempts to settle Texas cases. That the companies with whom those

23  settlements were reached were based in California was simply a result of where

24  those companies were headquartered, not a result of American's purposeful

25  direction of its activities toward California. (Indeed, as Epson America's complaint

26  establishes, most of the cases that American has filed in Texas are not against

27  California companies. Dkt. 1 at ¶38.)

28         Indeed, the ancillary-activities principle should apply even more strongly

10

where, as Epson America alleges here, the ancillary activities are settlements of (or attempts to settle) Texas lawsuits.  The vast majority of federal cases—and especially patent cases—end in settlement.  It would make no sense to hold that, although jurisdiction in a forum cannot be supported by an out-of-state patent suit, it can be supported by that suit's most common result—a settlement and license agreement—simply because the defendant happened to be headquartered in the forum.  *See ZTE v. AGIS Software*, No. 18-CV-06185-HSG, 2019 WL 4345961, at *7 (N.D. Cal. Sept. 12, 2019) (concluding that "subpoenaing documents from a third-party California corporation and noticing depositions of witnesses located in California" were not contacts sufficient to establish personal jurisdiction," because they were the result of third-party activity, namely the location of documents and witnesses related to the action filed in Texas).

Second, none of the alleged licenses or attempted licenses with unrelated California companies "are of a kind that would support personal jurisdiction over" American.  *See Adobe Sys.,* No. C-14-0868 EMC, 2014 WL 4651654, at *5 (Adobe failed to meet its burden to demonstrate that its licensing agreements resulting from enforcement in Texas are of a kind that would support personal jurisdiction in California). "While patent licensing agreements with forum residents can form the basis of personal jurisdiction, not all licensing agreements are sufficient to establish the required 'minimum contacts.'" *Id.*  It is ***exclusive*** licenses that courts find to potentially support personal jurisdiction.  *See, e.g., Avocent*, 552 F.3d at 1334 ("Examples of 'other activities' [that support declaratory-judgment personal jurisdiction] include ***. . . entering into an exclusive license agreement*** or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum.").  Here, however, "it is clear—simply by the existence of multiple [alleged] licenses between [American] and others—that the license agreements are not exclusive in nature." *See Adobe Sys.,* No. C-14-0868 EMC, 2014 WL 4651654, at *6 (concluding that

11

patentee's nonexclusive licenses with California entities, which did not create

continuing obligations in California, did not support specific jurisdiction for a

declaratory judgment case).

Indeed, as another court in this district has explained, "[e]xtensive authority

supports the proposition that other *licensing* activities with in-state entities, even if

substantial, are generally insufficient for specific jurisdiction unless they create

exclusive relationships between the patentee and residents of the forum."

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No. SACV 07–846–MRP (ANx),

2008 WL 7071464, at \*4 (C.D. Cal. Jan. 17, 2008) (emph. in original), *aff'd* 566

F.3d 1012 (Fed. Cir. 2009).  Both the Federal Circuit and other district courts have

reached similar conclusions.  *See Breckenridge Pharm, Inc. v. Metabolite Labs.,*

*Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (explaining that a defendant may not be

subjected to personal jurisdiction where its only additional activities in the forum

state are that the "defendant has successfully licensed the patent in the forum state,

even to multiple non-exclusive licensees, but does not, for example, exercise

control over the licensee's sales activities and, instead, has no dealings with those

licensees beyond the receipt of royalty income"); *Engineering & Inspection Servs.,*

*LLC v. IntPar, LLC*, No. 13–0801, 2013 WL 5589737, at \*6 (E.D. La. Oct. 10,

2013) ("Further, the letters that Defendant sent to Plaintiff contemplated entering

into a non-exclusive license, which would not provide grounds for conferring

jurisdiction, assuming other businesses similarly situated to Plaintiff agreed to

comply."); *Nanoexa Corp. v. Univ. of Chicago*, No. 10–CV–2631–LHK, 2010 WL

4236855, at \*5 n.3 (N.D. Cal. Oct. 21, 2010) ("As acknowledged by Plaintiff . . .

the License Agreement is non-exclusive and thus would not favor a finding that

Defendant Argonne purposefully availed itself of the privileges of conducting

business in California even under Federal Circuit law.").

Nor would it matter that the alleged non-exclusive licensing activities

resulted in American receiving royalties from California.  Indeed, in one appeal

12

from dismissal of a declaratory judgment action, the Federal Circuit held that royalty income that the defendant received from 34 non-exclusive licensees that sold products in the forum was irrelevant to minimum contacts. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). *Red Wing Shoe* explained that "'financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.'" *Id.* at 1361-62 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.286, 299 (1980)). As was the case in *Red Wing Shoe*, "[b]ecause the contacts of [American's non-exclusive] licensees with Minnesota are not 'constitutionally cognizable' for purposes of jurisdiction over [American], *any financial benefits accruing to [American] from its licensees' relations with [California] are irrelevant.*" *Red Wing Shoe*, 148 F.3d at 1361-62 ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."). For these reasons, American's alleged licensing of California-based companies through settlements of Texas lawsuits does not support California jurisdiction.

### 4. This case does not arise from or relate to American's settlements with unaffiliated California-based companies.

Even if Epson America's alleged licensing contacts could show that American purposefully directed its licensing activities toward California—rather than merely towards California *residents*—that would still be insufficient to show minimum contacts. The second part of the test for minimum contacts requires the plaintiff to show "that the litigation results from alleged injuries that arise out of or relate to those activities." *New World Int'l v. Ford Global Techs., LLC,* 859 F.3d 1032, 1037 (Fed. Cir. 2017) (quoting *Burger King,* 471 U.S. at 472). Epson America has not alleged, and cannot show, that its declaratory judgment lawsuit arises from or relates to American's settlements with Californian companies that are not affiliated with or otherwise connected to Epson America.

13

"Often, the central purpose of a declaratory judgment plaintiff . . . is to clear the air of infringement charges." *Red Wing Shoe Co.*, 148 F.3d at 1360 (Fed. Cir. 1998). So "[t]he injury of which a declaratory judgment plaintiff complains. . . is a wrongful restraint on the free exploitation of non-infringing goods," such as "the threat of an infringement suit, as communicated in a cease-and-desist letter." *Id.* Here, however, Epson America only alleges that American's allegations in the Seiko Epson Action that American filed against Epson's affiliates created a substantial controversy and reasonable apprehension of suit. Dkt. 1, ¶¶ 42-44. In particular, the complaint alleges that American's "actions directed at Epson America through its allegations in the ED Texas Complaint go beyond a threat of patent enforcement and subject Epson America to a reasonable apprehension of suit by AP for infringement of the Patents-in-Suit." *Id.* Since there is at least some logical connection between this case and the Seiko Epson Action for infringement, American does not dispute that Epson America's action relates in some sense to the case against its affiliates.

But American's alleged licenses with unrelated California-based companies are another matter entirely. Epson America does not allege that this case arises from or relates to American's enforcement litigation in Texas against those unrelated companies. And on the face of the complaint, most of those lawsuits were settled and dismissed well before the Seiko Epson Action was even filed. Dkt. 1 at ¶¶ 29-37 and Exs. G, H, I, J, K, L, M, and N. Because there is no connection between Epson's declaratory judgment action and the alleged licenses with unrelated California companies, these contacts cannot support jurisdiction.

The Supreme Court's recent *Ford* decision does not change that conclusion. In *Ford*, the Court construed broadly the requirement for specific jurisdiction that a lawsuit "arise out of or relate to" the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). But *Ford*'s reasoning "does not mean anything goes." *Id.* at 126. The phrase "relate

to" still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* Consistent with that principle, the Federal Circuit has recognized Ford's emphasis on the fact that defendant's contacts still "must show that the defendant deliberately reached out beyond its home" such that "there is a strong relationship among the defendant, the forum, ***and the litigation.***" *Trimble*, 997 F.3d at 1156 (quoting *Ford*, 141 S. Ct. 1115) (emphasis added); *see also LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 863 (9th Cir. 2022) (discussing *Ford*, but concluding that even if plaintiffs could establish that the defendant operates repair centers in Arizona, they did not establish that their injuries arose out of or related to those contacts with Arizona).

Here, Epson America has not alleged American did anything more than settle cases that it brought in Texas, its home state. And Epson America has not alleged that it filed this action for any reason that relates at all to American's settlements with unaffiliated California-based companies. Thus, Epson America's declaratory judgment suit does not arise from or relate to American's settlements with unaffiliated Californian companies—so those contacts cannot support personal jurisdiction in California.

## C. Exercising Personal Jurisdiction over American Would Not Comport with Fair Play and Substantial Justice

The third and final step in analyzing personal jurisdiction is, if it has been shown that a defendant established minimum contacts with the forum state, to consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. 462, 476 (quoting *International Shoe*, 326 U.S. at 320). As shown above, Epson has not made a prima facie showing of personal jurisdiction over American. Thus, the Court need not even reach the last inquiry. *See, e.g., Kellytoy v. Jay at Play Int'l Hong Kong Ltd.*, 2019 WL 8064196, * 7 (C.D. Cal. Dec. 5, 2019) (court did not need to address second and third prongs of test for

specific jurisdiction because plaintiff did not show a relationship between the defendant, the forum, and the litigation).  But even if Epson had shown the required minimum contacts, exercising specific jurisdiction over American would not comport with fair play and substantial justice.  Each of the five *Burger King* factors supports American.

First, American's burden in appearing in this district is substantial.  All of American's personnel and activities are in Texas.  American has no contacts with California.  Requiring American to defend against Epson's allegations in this district, while it continues to litigate the same patent infringement claims against multiple defendants in Texas, would significantly increase American's costs and burden.

Second, the State of California has little interest in adjudicating this dispute, which is already being litigated in a sister court.  Epson America's office in Las Alamitos is the only connection to this forum.  Epson America is not even a party to the Seiko Epson Action that inspired this declaratory judgment suit.

Third, litigating in this forum is unnecessary to advance any legitimate interest Epson America has in obtaining convenient and effective relief.  This is not the "sad and saddening scenario" where the patent owner "attempts extra-judicial patent enforcement" to infect the business community with uncertainty and insecurity" but refuses to "grasp the nettle and sue."  *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988) (describing the dilemma facing a potential infringement defendant before the enactment of the Declaratory Judgment Act).  Seiko Japan (Epson America's corporate parent) and Epson Philippines (one of the manufacturers of accused products) are already defendants in American's patent infringement suit in Texas.  Epson America does not argue that its corporate affiliates cannot adequately represent its interests in the Seiko Epson Action.  Indeed, the three companies are represented by the same law firm in both cases.  And there is no reason the relief Epson America seeks in this

NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT
Case No. 8:21-cv-02102-DOC (ADSx)

1  Court—a declaration of non-infringement—would not also be effective if sought

2  by the Epson defendants in the Seiko Epson Action.  Apparently, Epson America

3  simply thinks it will fare better in this district.

4      Fourth, this lawsuit does not serve—and in fact impairs—the judicial

5  system's interest in obtaining the most effective resolution of the controversy.  The

6  Federal Circuit has explained that this fair play and substantial justice concern is

7  invoked by the policy favoring settlement of disputes.  *Red Wing*, 148 F.3d at

8  1361.  Creating a disincentive for patentees to settle their disputes with infringers

9  by entering into license agreements would be in tension with that policy, contrary

10  to considerations of fair play and substantial justice.  *Id.*  Patentees have the right

11  to sue in their home forum without creating a basis for declaratory judgment

12  jurisdiction in every state an infringer calls home.

13      American Patents also has multiple suits pending in the Eastern District of

14  Texas involving the patents-in-suit.  Dkt. 1, ¶¶ 30-39.  This lawsuit undercuts the

15  values of economy, consistency, and comity by creating duplicative litigation and

16  the risk of inconsistent court rulings.  As one California district judge concluded:

17      When patent cases are duplicative—when… a case involves the same

18      parties and substantially the same issues as an earlier-filed suit—

19      allowing the second suit to move forward undermines judicial

20      efficiency.  It would require parties to brief and argue the same issues,

21      and courts to spend already-limited time and resources deciding them.

22      Importantly, it risks conflicting decisions among courts.  If venue is

23      contested in the first suit, the proper cause of action is for a party to

24      file the appropriate motion, wait for it to be decided, and then respond

25      according to the court's ruling.  Filing another lawsuit beforehand in

26      another court beforehand is inappropriate.

27  *Docusign*, 2022 WL 225623, at *6.  The Court should not indulge Epson

28  America's transparent efforts to gain an advantage via forum shopping.

1    Fifth, no social policy of Texas or California supports Epson American's

2    conduct.  Its forum shopping serves no common interest.  Its only request for relief,

3    a declaration of non-infringement, could easily be made by its affiliates in Texas.

4    Finally, maintaining this suit in this forum would be unreasonable and unfair

5    for a more fundamental reason.  It is a core principle of due process that a party

6    should be able to reasonably foresee the possibility that its acts may lead it to be

7    called to defend itself in the forum state.  *Ford,* 141 S. Ct. at 1025 (Supreme

8    Court's specific jurisdiction doctrine provides "fair warning"—knowledge that a

9    particular activity may subject [it] to the jurisdiction of a foreign sovereign.").

10   "Fair warning is desirable for non-residents [that] are thus able to organize their

11   affairs, alleviate the risk of burdensome litigation by procuring insurance and the

12   like, and otherwise plan for the possibility that litigation in the forum might

13   ensue." *Beverly Hills Fan*, 21 F.3d at 1565 (citing *World–Wide Volkswagen*, 444

14   U.S. at 297).  Due process requires "potential defendants [be able] to structure their

15   primary conduct with some minimum assurance as to where that conduct will and

16   will not render them liable to suit." *Burger King Corp.*, 471 U.S. at 472 (quoting

17   *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

18   The Federal Circuit has given patentees practical guidance as to how to

19   structure their enforcement conduct so as to avoid subjecting themselves to

20   jurisdiction in the forum where a purported infringer receives notice of the

21   patentee's rights and of its own potential liability.  When a company receives a

22   patent, it obtains the right to exclude all others from making, using, or selling the

23   patented invention without its permission.  *Avocent Huntsville*, 552 F.3d at 1334.

24   Thus, the Federal Circuit has held, "[p]rinciples of fair play and substantial justice

25   afford a patentee sufficient latitude to inform others of its patent rights without

26   subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe*, 148 F.3d at

27   1360-61.  This is why, for the exercise of personal jurisdiction to comport with fair

28   play and substantial justice, there must be "other activities directed at the forum

1  and related to the cause of action" besides providing notice of patent rights.  *Silent*
2  *Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003).

3      Here, in *Burger King's* language, American Patents has structured its
4  primary conduct to avoid reaching out beyond its home state.  It has consistently
5  enforced its patents in its home state of Texas—not even raising the issue of
6  licensing until it has sued the infringers in Texas.  On these undisputed facts, there
7  is simply no reason that American Patents would expect to be haled into court in
8  California to defend a suit by a company it has never contacted, and in a far-away
9  state it has never even visited, because it settled suits it filed in its home state.  The
10  outcome Epson invites could have far-reaching and undesirable consequences for
11  patent owners.  Because Epson America has failed to establish minimum contacts,
12  and American has shown that asserting jurisdiction over it under these
13  circumstances would not comport with due process, the action should be dismissed
14  for lack of personal jurisdiction.

15  **IV.  ALTERNATIVELY, THE COURT SHOULD DISMISS, STAY, OR**
16  **TRANSFER THIS ACTION BASED ON THE FIRST-TO-FILE RULE**

17      When infringement and declaratory judgment actions sufficiently overlap
18  but are filed in different courts, the declaratory judgment action, if filed later,
19  generally is to be stayed, dismissed, or transferred to the forum where the
20  infringement action is pending.  *See, e.g., Futurewei Techs., Inc. v. Acacia*
21  *Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013). "Resolution of whether the
22  second-filed action should proceed presents a question sufficiently tied to patent
23  law that the question is governed by [Federal Circuit] law." *Id*.

24      The first-to-file rule exists "to avoid conflicting decisions and promote
25  judicial efficiency.'" *Id.*  It is "a doctrine of federal comity, intended to avoid
26  conflicting decisions . . . that generally favors pursuing only the first-filed action
27  when multiple lawsuits involving the same claims are filed in different
28  jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2015); *see*

*also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (noting policy of 'preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.'" (quoting *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).  Indeed, a district court always has broad discretion to refuse to entertain a declaratory judgment action, providing it acts in accordance with the purposes of the Declaratory Judgment Act and principles of sound judicial administration.  *Wilton v. Seven Falls Co*., 515 U.S. 277, 287 (1995); *Communications Test Design, Inc. v. Contec*, *LLC*, 952 F.3d 1356, 1361-62 (Fed. Cir. 2020) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996)).

In general, courts consider three factors when applying the first-to-file rule: (1) the chronology of the filings, (2) the similarities of the parties, and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991).  This case presents a clear-cut application of the rule.

First, the Seiko Epson Action is the first-filed case.  Epson's own complaint, filed December 21, 2021, alleges that American filed that Texas case on September 15, 2021.  Additionally, the Court in the Texas case has already set a Final Pretrial Conference for April of next year.  *American Patents LLC v. Seiko Epson Corp., et al.*, No. 4:21-cv-00718-ALM, Dkt. 21, Order Governing Proceedings at 15 (E.D. Tex. Jan. 4, 2022).  So Epson America's noninfringement arguments will likely be heard much sooner in the Texas Action than they would be in this district.

Second, there is complete unity of the issues.  In the first-filed action, American alleges that accused Epson products sold in the United States infringe four of its patents.  In this second-filed action, Epson requests a declaratory judgment of non-infringement of the same patents by the same accused products. Dkt. 1 at ¶ 1.

Third, there is sufficient overlap of the parties:  The defendants in the Texas Action are related Epson entities, and Epson America claims to be responsible for

20

1   sales in the United States of the accused Epson products that are made by the Seiko
2   Epson Action defendants.  Dkt. 1 at ¶ 16.  While courts look to the similarities of
3   the parties involved, they need not be identical.  *Kohn Law Group, Inc. v. Auto*
4   *Parts Mfg. Mississippi, Inc.,* 787 F.3d 1237, 1240 (9th Cir. 2015); *Guthy-Renker*
5   *Fitness, LLC v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 270 (C.D. Cal. 1998).
6   Thus, Epson's complaint illustrates that the first-filed Texas Action and this
7   declaratory judgment suit are effectively mirror images of one another.  Under
8   these circumstances, the first-to-file rule applies.  *See Futurewei,* 737 F.3d at 708
9   (affirming district court's dismissal of a second-filed declaratory judgment action
10  based on the rule).

11          Nor do the circumstances support any exception to the first-to-file rule.
12  Epson may argue that the Court should not apply the first-to-file rule because its
13  affiliates in the Texas Action have filed a motion to dismiss under Rule 12(b)(6)
14  and, alternatively, to transfer venue.  But it is the court with the first-filed action
15  that normally should weigh the balance of convenience and any other factors that
16  might support an exception to the rule.  *See Alltrade*, 946 F.2d at 628 (district
17  judge did not abuse his discretion by applying the first-to-file rule; convenience
18  arguments should addressed to the court in the first-filed action); *Vizio, Inc. v.*
19  *Pragmatus Telecom*, LLC, No. SACV 14-00462 JAK, 2014 WL 12584306, *1
20  (C.D. Cal. June 18, 2014) (staying second-filed declaratory judgment case, and
21  declining to consider exceptions, pending a ruling by the court in the first-filed
22  infringement case on a motion to dismiss or transfer that case).  Some courts have
23  applied the first-to-file rule regardless of pending motions in the first-filed case
24  seeking transfer or asserting improper venue.  *See, e.g., EMC Corp. v. Bright*
25  *Response, LLC*, No. C-12-2841-EMC, 2012 WL 4097707, at *5 (N.D. Cal. Sept.
26  17, 2012) (applying the rule despite a pending motion to transfer); *USA Scientific,*
27  *LLC v. Rainin Instrument*, LLC, No. C-06-4651-SBA, 2006 WL 3334927, at *2
28  (N.D. Cal. Nov. 16, 2006) (applying the rule despite a pending motion to dismiss

21

1    for improper venue).  In the words of another district judge:

2          There is no need to drag a second judge into addressing the initial

3          question of whether venue is proper in the first lawsuit, and no need to

4          keep a second lawsuit on file while waiting for the first judge to rule on

5          that question…The practice of allowing parties in patent cases to bring

6          duplicative lawsuits is nothing but a waste of time and money for the

7          parties and the courts.

8    *Marvell Semiconductor Inc. v. Monterey Research. LLC*, No. 20-cv-03296-VC,

9    2020 WL 6591197, at *1 (N.D. Cal. Nov. 11, 2020).  Thus, Epson America's

10   invitation for this Court to examine the open jurisdictional and venue disputes in

11   the first-filed court undercuts the values of economy, consistency, and comity that

12   the first-to-file rule is designed to maximize.  This Court's ruling on jurisdiction

13   and venue would either conflict with the Texas court's earlier ruling, rehash an

14   issue already decided, or preempt its sister court's resolution of the issue already

15   before it.

16         An exception is sometimes justified where the plaintiff in the first-filed suit

17   is guilty of forum shopping.  But here, American Patents chose to file in its home

18   state, as it has many times before.  Instead, the policies underlying the first-to-file

19   rule will be affirmatively served by transferring, dismissing, or staying this case.

20   In short, there is no sound reason to disrupt the first-filed court's proceedings by

21   allowing this second-filed suit to continue.

22   **V.    CONCLUSION**

23         Because American Patents lacks contacts with the state of California, this

24   Court lacks personal jurisdiction over American Patents and should dismiss the

25   complaint. Alternatively, the Court should dismiss, stay, or transfer this case under

26   the first-to-file rule.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

March 11, 2022                          INSIGHT, PLC
                                        By */s/ Steve W. Ritcheson*
                                        Steve W. Ritcheson (SBN 174062)
                                        Attorneys for American Patents LLC

NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT
Case No. 8:21-cv-02102-DOC (ADSx)